FILED
IN CLERK'S OFFICE
U.S DISTRICT COURT E.D.N.Y
★ JUN 24 2014 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MANUEL J. PARDO,

           Plaintiff,

   -against-

SECURITAS,

           Defendant.
----------------------------------------------------------X

**MEMORANDUM AND ORDER**

14-CV-2181 (SLT)

**TOWNES, United States District Judge:**

        On April 7, 2014, Defendant Securitas Security Services USA, Inc. filed a Notice of Removal of the action filed against it in the Supreme Court of the State of New York, Kings County by Plaintiff Manuel J. Pardo. The Court finds that it lacks original jurisdiction over the state court action. Accordingly the case is hereby remanded to state court.

## BACKGROUND

        According to the complaint Plaintiff filed in state court, he was hired by Defendant and began working at University Towers as a security guard on July 2, 2008. (Complaint, ¶¶ 2-3 (ECF Entry # 1, Exhibit A, ECF pp. 5-20).) Plaintiff alleged that when he began his employment at University Towers, the site had separate locker rooms for men and women. (Id. ¶ 3.) "Approximately eight months later, Site Manger[] Franco Trombino arrived. He did away with the women's locker room so he could have two offices. Men and women changed clothes in the same locker room." (Id. ¶ 3.) "The plaintiff expressed his concerns to the union," but "[a]fter following up several times, the plaintiff stopped complaining." (Id. ¶ 3.) "Going to the National Labor Relations Board (N.L.R.B.) brought no changes either." (Id. ¶ 3.)

        Plaintiff further alleged that Mr. Saez was hired as an Account Manager in the

Spring of 2010 and prohibited employees from using the restroom inside the employee room. (Id. ¶ 4.) "This made using the restroom a hardship, particularly on cold days and as a result of the fact[] that the plaintiff suffered with frequent urination, due to a medical condition called[] Benign Prostatic Hyperplasia (BPH)." (Id. ¶ 4.) Plaintiff complained to Mr. Saez and then, "since it was clear that Mr. Saez was more obstinate, not less, the plaintiff resumed his complaints to the union and the N.L.R.B., when he felt necessary, countless times." (Id. ¶ 4.)

"The defendant told plaintiff he needed to report to work in uniform because a female employee complained about being made uncomfortable in the locker room. Plaintiff had been protesting the locker room situation for two years. . . . Suddenly, Mr. Saez had a mysterious woman complaining about feeling uncomfortable." (Id. ¶ 10.) "The allegation made by Mr. Saez forced plaintiff to stop changing in the locker room." (Id. ¶ 11.)

Plaintiff alleged that Saez violated other employment protection regulations: "Mr. Saez blatantly violated New York state employment law by refusing to allow employees to leave the job site during their lunch periods." (Id. ¶ 14.) "In addition[] to maintaining a unisex locker room[,] the defendant closed down the job site restroom." (Id. ¶ 14.) "[Closing] the job site bathroom violat[ed] OSHA code 1910.141(c)(1)(l)." (Id. ¶ 14.) "He eliminated[] the lockers . . . and the employee's eating area." (Id. ¶ 14.)

"The plaintiff's insistence on having regular restroom and locker room facilities ultimately led to his being unjustly terminated." (Id. ¶ 11.) "[P]laintiff began to see that there was a direct correlation with every union complaint and Mr. Saez's retaliation tactics." (Id. ¶ 5.) Plaintiff stated that he usually complained on his days off, Wednesdays and Thursdays, and that when he would return on Friday mornings, "he would always be told . . . that Mr. Saez ordered

2

all workers to cease all use of reading and writing materials and electronic devices." (Id. ¶ 5.) After one of these occurrences, "plaintiff advised Mr. Garcia that he would be filing a grievance with the union and the N.L.R.B. to see if Mr. Saez had the right to flip-flop the rules every time the plaintiff complained to the union, and until a decision was made, he would use his computer. Two days later the plaintiff was terminated for using his computer." (Id. ¶ 18.) "The morning that plaintiff was written up for using an electronic device, his other two coworkers listened to electronic devices as well. Yet, the plaintiff was the only one written up and terminated. After the plaintiff was terminated, the use of electronic devices resumed on all shifts as usual. This hypocritical, unfair and unequal treatment is a clear sign of retaliation." (Id. ¶ 18.) "The plaintiff alleges and the evidence proves that the plaintiff was harassed and retaliated against for 'whistle blowing' and engaging in union activities." (Id. ¶ 18.)

Plaintiff alleged that he and other employees were terminated "on trumped up charges." (Id. ¶ 7.) "It was said that Saez and Human Resources representative, Ms. Alison Kelly[,] would collude to terminate employees for the smallest, most insignificant infractions and hide behind the 'At Will' employment policy doctrine." (Id. ¶ 8.) "Many of these employees, including the plaintiff, who remains unemployed, were denied unemployment benefits because they allegedly violated company policy." (Id. ¶ 8.) "The plaintiff assisting colleagues and complaining to the union and N.L.R.B. caused him to be viewed as a 'whistle blowing' trouble maker and threat to a company determined to profit without concern for employee rights or fear of being held accountable to laws they have thus far violated with impunity." (Id. ¶ 9.)

Plaintiff also alleged "intentional infliction of emotional distress," "harassment," "slander" and "tortuous actions implemented by a defendant bent on retaliation." (Id. ¶ 6.) He

3

stated that he took medical leave, on advice of his doctor "for various medical reasons, stress and exhaustion being two of them." (Id. ¶ 13.) Upon his return, "plaintiff concluded that Mr. Saez is likely to have contributed to his stress and exhaustion." (Id. ¶ 13.) Saez "told plaintiff's colleagues[] that he had uncovered the plaintiff's medical leave to be a sham. (*slander*). This would not be the only time the defendant slandered the plaintiff to colleagues." (Id. ¶ 13.)

Plaintiff previously filed an action against the same Defendant in this Court pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2002-17 ("Title VII"). That case alleged similar allegations against Securitas. In it, Plaintiff alleged that he complained to the union and the NLRB about the unisex locker room and the closing of the restroom, and that he was retaliated against as a result. That complaint was filed on a Title VII form, but specifically denied that he was discriminated against. Instead, he alleged that "[m]y site manager, Mr. Francisco Saez, would 'flip-flop' the rules every time I went to the union." Pardo v. Securitas, 13 CV 3796 (JG) (E.D.N.Y.), ECF Entry # 1, at 4.) "Therefore, my employer (Securitas) fired me on bogus charges of insubordination for listening to electronic devices." Id. That case was dismissed for failure to state a claim, because Plaintiff failed to show that he was discriminated against on the basis of his membership in a protected class. Pardo v. Securitas, No. 13 CV 3796 (JG), 2013 WL 5423798 (E.D.N.Y. Sept. 26, 2013).

Plaintiff's state court complaint does not rely on Title VII, although it makes one reference to this federal statute: "defendant is guilty of harassment, intentional infliction of emotional distress, slander, retaliatory discrimination which violates Title VII of the Civil Rights Act of 1964." (Id. ¶ 20.) He also cited the Occupational Safety and Health Act of 1970 and regulations related to access to toilet facilities under 29 C.F.R. 1910.141. (Id. ¶ 20.)

4

Defendant Securitas's Notice of Removal alleges that Plaintiff's claims arise under Title VII and OSHA. (Notice of Removal ¶ 1.) Defendant seeks to remove this action to this Court on the grounds that the Court has original jurisdiction over Plaintiff's claims. (Notice of Removal ¶ 3.)

## **DISCUSSION**

Title 28, Sections 1441 - 1453 of the United States Code set forth the criteria and procedures for removing a civil action from state court to federal court. The Notice of Removal must be filed within 30 days after the initial pleading setting forth the claim for relief. 28 U.S.C. § 1446(b). The defendant or defendants seeking removal must also file a notice "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." 28 U.S.C. § 1446(a).

The statute provides for removal of claims over which the federal courts have "original jurisdiction." 28 U.S.C. § 1441(a). Thus, a claim may only be removed to federal court if it could have been filed in federal court originally. Fax Telecommunicaciones Inc. v. AT&T, 138 F.3d 479, 485 (2d Cir. 1998). "[F]ederal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction." Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700-01 (2d Cir. 2000). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. §1447(c).

Defendant removed this case on the grounds that the Court has original jurisdiction over Plaintiff's claims under Title VII and OSHA. (Notice of Removal ¶¶ 1, 3.)

5

Indeed, Plaintiff did refer to both of these federal statutes in his pleading. He suggested that the state law claims he raised – "harassment, intentional infliction of emotional distress, slander, [and] retaliatory discrimination" – also violated Title VII. He also references sections of OSHA related to the provision of toilet facilities. (Complaint ¶ 20.) However, the Court finds that the gravamen of Plaintiff's complaint, related to retaliatory discharge, sounds in state law, not in the federal laws which he gratuitously cited.

Plaintiff's state court complaint, like his prior federal complaint, fails to state a claim under Title VII. That statute provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). To state a cause of action under Title VII, abusive conduct in the workplace must be related to the plaintiff's membership in one of these protected classes. Brennan v. Metro. Opera Ass'n, 192 F.3d 310, 318 (2d Cir. 1999). Plaintiff's state court complaint does not assert that he was discriminated against on the basis of his membership in a protected class. Accordingly, despite its single reference to Title VII, the complaint does not arise under the federal laws related to employment discrimination. In the absence of alleged discriminatory conduct, this Court does not have jurisdiction over Plaintiff's claim of retaliatory discharge.

The state court complaint makes multiple references to OSHA and the NLRB. Plaintiff alleges that his former workplace violated multiple OSHA regulations, including those related to access to toilet facilities. However, district courts do not have jurisdiction over OSHA

regulations or violations. OSHA's workplace protections are to be enforced by the Secretary of Labor, and not through a private right of action by employees. See, e.g., Donovan v. Occupational Safety and Health Review Comm'n, 713 F.2d 918, 926-27 (2d Cir. 1983) ("[I]t is apparent from the detailed statutory scheme that the public rights created by the Act are to be protected by the Secretary, and that enforcement of the Act is the sole responsibility of the Secretary." (citations omitted)). "Thus, neither an OSHA violation nor retaliation against an employee for complaining of such a violation will support a cause of action under OSHA by the affected employee." Jones v. Staten Island University Hosp., No. 04-CV-3302 (JG), 2006 WL 2713987, at *1 (E.D.N.Y. Sept. 22, 2006). Accordingly, this Court does not have jurisdiction over alleged OSHA violations, and these claims, even if advanced as such in the state court complaint, cannot serve as grounds for removal to federal court.

The Court finds that Plaintiff's claims do not arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Accordingly, the complaint is not properly removed under 28 U.S.C. § 1441(a) or any other provision of the removal statute, and thus the above-captioned action is hereby remanded to state court.

## CONCLUSION

For the reasons set forth above, the Court finds that removal of this action is improper. The Clerk of the Court is respectfully directed to remand the case back to the New York Supreme Court, Kings County. The Clerk is further directed to send a certified copy of this Order to the Clerk of the Kings County Court, and to close the case in this Court.

SO ORDERED.

/s/(SLT)

SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
June 24, 2014